## Case No. 5,250.

### GARRETSON v. CLARK et al.

[4 Ban. & A. 536;[1] 16 O. G. 806.]

Circuit Court, N. D. New York. Sept. 3, 1879.

PATENTS — APPORTIONMENT OF PROFITS — EVIDENCE—PROVINCE OF MASTER—COSTS.

1. Where, upon an accounting, the plaintiff had given evidence before the master, showing the profits made by the plaintiff by the sale of articles containing his patented features, and showing also the profits made by the sale of similar articles not containing the patented features: *Held*, that such evidence would be proper only in a case where the entire value of the whole machine, as a marketable article, is properly and legally attributable to such patented features.

[Cited in Kirby v. Armstrong, 5 Fed. 803.]

2. It is not the province of the master, or the court, rejecting a plaintiff's proofs as to profits, to suggest what is the proper line of proof to adopt—the burden of laying a proper basis by evidence for ascertaining the profits is on the

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

plaintiff. The case of Herring v. Gage [Case No. 6,422] cited.

3. The question of costs on a reference to a master, considered.

[This was a bill in equity by Oliver S. Garretson against Charles B. Clark and others for the alleged infringement of two patents for "improved mop-heads." The first (No. 54,860) was granted to Charles B. Clark and Oliver S. Garretson, May 22, 1866; the other (No. 67,643) was granted to Oliver S. Garretson, August 13, 1867.]

James A. Allen, for complainant.

F. A. Macomber, for defendants.

BLATCHFORD, Circuit Judge. The rule laid down in the decision rendered in this case July 5th, 1878 [Case No. 5,248], was this: "The patentee must, in every case, give evidence tending to separate or apportion the defendants' profits and the patentees' damages, between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." I understand this rule to be the result of the authorities. The plaintiff does not controvert the rule, but insists that he has complied with it. The conclusion of the court was this: "In the present case, the master reports that the plaintiff has failed to give such evidence, and I concur with the master in his conclusion."

The plaintiff contends that the evidence before the master furnished a substantial compliance, according to the nature of the subject-matter, with the rule that the profits or damages deducible from the use of the patented features must be separated from the profits or damages upon the article as a gross product. He contends that such evidence made the separation referred to, because it showed, on the one hand, the profits which the plaintiff made in making and selling mops containing his patented features, and, on the other hand, the profits realized from the manufacture and sale of forms of mops on actual sale which did not embody the plaintiff's patented features. This is the same proposition which was considered and rejected by the master and the court; but the evidence referred to would be the proper evidence only in a case where the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented features. In such a case as that, the profits and damages are to be calculated on the whole machine. This is not such a case. The master says: "There has been no evidence before me that would warrant a finding that the whole success of the mops in question, either of the defendants' or of the complainant's manufacture,

was due to the peculiar construction described in the claims of the patents above referred to. Nor could I find, from the evidence, that that peculiar construction constituted the sole feature that made the mops a success in the market. Such finding would be required to sustain the complainant's theory of damages." The master was clearly correct in thus holding. The plaintiff complains that the master's report contains only negations, and omits to affirm what specific line of proof on the part of the plaintiff should have been adopted properly to establish his damages. It was not the province of the master, nor is it the province of the court, to suggest any specific line of proof, either as proper or necessary. The burden is on the plaintiff to lay a basis, by evidence, for ascertaining the proper profits or damages. If he produces certain evidence, and lays a certain basis, all that the master and the court are to do is to say whether he has made out his case or not. If he has not made out his case, that is all there is to be said. It cannot be said that there may not be many forms of evidence which would be satisfactory to show that a plaintiff is entitled to the profits on the whole machine. Their sufficiency is to be passed upon when they are presented.

It is also contended that the court did not pass on the first five exceptions taken by the plaintiff; but I think it quite apparent, that, in passing on the sixth and seventh exceptions, the court passed on the first five. The first claims that there was evidence of damages and profits; the second, that it was error to award only nominal damages; the third, that there was evidence of actual damages; the fourth, that there should have been a report of an amount of actual damages; the fifth, that there should have been a report of an amount of actual profits. I do not perceive that any of the considerations now presented on the part of the plaintiff were overlooked by the court in its former decision.

In the case of Herring v. Gage [Case No. 6,422], in this court, decided by Judge Wallace, the master reported that the defendants, in milling, saved, by using the patented device, one barrel of flour in every six hundred made, saving thus so many barrels, worth so much a barrel. He reported such saving as profits, and reported it as a saving made over and beyond the saving which the defendants could have made by the use of any other device. The plaintiff did not except, and the defendants did except that such finding was not supported by the proof. The proof given by both sides was as to the additional saving made by the use of the patented device, over what might have been made by the use of other devices for cooling and drying meal, as a substitute for the patented device. Judge Wallace remarked that it appeared that the defendants had saved, by the use of the patented device, flour which,

until they used that device, had been lost; and, in commenting on the rule laid down in Mowry v. Whitney, 14 Wall. [81 U. S.] 651, he said that that was a case where the entire profit of the manufacture had been given by the master, when such profit was largely due, not to the patented invention, but to other processes actually used by the defendant, and that the rule so laid down did not apply where the profit had been made directly by the use of the patented device. This case is like Mowry v. Whitney, and is not like Herring v. Gage. There is nothing in the decision in the latter case that is inconsistent with the rulings in the former decision in the present case. A plaintiff is required to separate between the patented part of what the defendant makes and sells and the unpatented parts, and not between such patented part and something which the defendant does not embody in his machine. The distinction is a plain one.

In its former decision [Case No. 5,248] this court directed that the plaintiff have the costs of the suit, except the costs of the reference before the master, and of his report, and of the exceptions, and of the hearing thereon; and that the defendants have the costs of such reference, and report, and exceptions, and hearing. The plaintiff alleges that the interlocutory decree provided that the plaintiff recover of the defendants "the costs of the complainant in this cause to be adjusted;" but it further provides that the question of the amount of such costs be reserved until the coming in of the master's report, and that a final decree be had for the same, together with the profits and damages which shall be finally adjudged to be payable to the plaintiff. It also awards a perpetual injunction to the plaintiff. In view of the award to the plaintiff of nothing but nominal damages and of no profits, it is not proper that the plaintiff should have any costs, except those to and including the interlocutory decree, and that the defendants should have the costs of the subsequent proceedings. There is nothing in this that is inconsistent with the interlocutory decree.

The prayer of the petition for a rehearing is denied, with costs.

[For subsequent proceedings, see Case No. 5,-249.]